Jaymie A. GISTER, Ethan A. Gister, a minor by his Guardian ad Litem, David E. Sunby, and Jared L. Ellis, a minor by his Guardian ad Litem, David E. Sunby, Plaintiffs-Appellants,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant,

SAINT JOSEPH'S HOSPITAL OF MARSHFIELD, INC., Defendant-Respondent-Petitioner.

Supreme Court

No. 2009AP2795. *Oral argument October 7, 2011.* *—Decided July 11, 2012.*

2012 WI 86

(Also reported in 818 N.W.2d 880.)

497

For the defendant-respondent-petitioner there were briefs by *Timothy W. Feeley, Sara J. MacCarthy* and *Hall, Render, Killian, Heath & Lyman, P.C.,* Milwaukee, and oral argument by *Timothy W. Feeley.*

For the plaintiff-appellant there was a brief by *David E. Sunby, Rhonda L. Lanford* and *Habush Habush & Rottier S.C.,* Wausau, and oral argument by *Rhonda L. Lanford.*

An amicus curiae brief was filed by *Matthew A. Biegert* and *Doar, Drill & Skow, S.C.,* New Richmond, for the Wisconsin Association for Justice.

¶ 1. MICHAEL J. GABLEMAN, J.   We review an unpublished, per curiam decision of the court of appeals,[1] reversing a declaratory judgment of the Dane County Circuit Court, Patrick J. Fiedler, Judge.

¶ 2.   We are asked to decide whether a charitable hospital may pursue payment for medical care provided to a Medicaid-eligible patient by filing a lien against a

---

[1] *Gister v. Am. Family Mut. Ins. Co.,* No. 2009AP2795, unpublished slip op. (Wis. Ct. App. Nov. 11, 2010).

settlement between the patient and an insurance company covering the liability of a tortfeasor responsible for the patient's injuries. To answer the question, we must harmonize the complex state and federal legal framework surrounding Medicaid with Wisconsin Statutes section 779.80 ("hospital lien statute"). We conclude that the soundest harmonization of the two permits the liens at issue here, and we therefore reverse the court of appeals.

## I.  BACKGROUND

¶ 3.  The relevant facts are undisputed. Jeffrey Mohr negligently ran a stop sign and crashed into a car containing Jaymie Gister and her sons Ethan Gister and Jared Ellis ("Gisters"). Another son of Jaymie Gister, Skylar Gister,[2] was also injured in the accident, as were several unrelated individuals, none of whose claims relate to this case. The vehicle Mohr was driving belonged to Jonathan and Mabel Harms, who had it insured with American Family Mutual Insurance Company ("American Family"). The American Family policy provided coverage of up to $250,000 for each injured individual, with a total cap of $500,000 for each accident. The Gisters suffered injuries of varying severity, and all four were treated at St. Joseph's Hospital ("St. Joseph's"). As later calculated by St. Joseph's,[3] the Gisters received medical care valued in the aggregate of $182,799.61, broken down as follows: Ethan Gister $9,612.66, Jared Ellis $17,552.56, Jaymie Gister $155,634.39.

---

[2] We do not include Skylar Gister—who received medical care from St. Joseph's valued at $355,770.36—in the "Gisters" referred to herein because the challenged liens which form the basis of this action did not name him.

[3] The Gisters do not contest the charges as unreasonable.

¶ 4.    The Gisters were all eligible for Medicaid at the time of the accident, and St. Joseph's billed Medicaid for the cost of Skylar Gister's medical care.[4] It did not bill Medicaid, however, for the other three Gisters, instead filing three liens ("St. Joseph's liens") pursuant to the hospital lien statute[5] against the proceeds of any future settlement reached between each of the Gisters

---

[4] The Gisters repeatedly emphasized in their briefs and at oral argument the fact that St. Joseph's submitted a bill to Medicaid for Skylar Gister's medical expenses, unlike the other Gisters. St Joseph's decision in that regard was not attacked at the circuit court, nor was it challenged at the court of appeals. We therefore decline to address the issue. *See In re Commitment of Mark,* 2006 WI 78, ¶ 34 n.13, 292 Wis. 2d 1, 718 N.W.2d 90 (reiterating that this court ordinarily refuses to consider issues not raised below).

[5] The hospital lien statute reads, in pertinent part:

(1) Every corporation, association or other organization operating as a charitable institution and maintaining a hospital in this state shall have a lien for services rendered, by way of treatment, care or maintenance, to any person who has sustained personal injuries as a result of the negligence, wrongful act or any tort of any other person.

(2) Such lien shall attach to any and all rights of action, suits, claims, demands and upon any judgment, award or determination and upon the proceeds of any settlement which such injured person, or legal representative might have against any such other person for damages on account of such injuries, for the amount of the reasonable and necessary charges of such hospital.

Wisconsin Statutes section 779.80 (2005–06). The first two liens (naming Ethan Gister and Jared Ellis) were filed in November 2006. The final lien (naming Jaymie Gister) was filed in January 2007. We cite to the statutes and regulations in effect when the first two liens were filed. No relevant language in any of the statutes or regulations changed during the months that elapsed between the filing of the first two liens and the filing of the third and final one. All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

and American Family in the amount of the calculated medical charges.

## II.  PROCEDURAL HISTORY

¶ 5.  After St. Joseph's liens were filed, both parties submitted motions for declaratory judgment in circuit court, St. Joseph's seeking an order declaring the liens valid, and the Gisters seeking one declaring them unenforceable. The circuit court concluded that the liens were valid and enforceable, and therefore granted St. Joseph's motion and denied the Gisters'. In an oral opinion, the circuit court reasoned that St. Joseph's was authorized by Wisconsin Administrative Code section DHS 106.03(8)[6] to either file the liens or bill Medicaid. The court rejected the Gisters' argument that Wis. Stat. § 49.49(3m)(a) (prohibiting hospitals from "knowingly impos[ing] direct charges upon a [patient] in lieu of obtaining payment" from Medicaid) barred the liens,

---

[6] Wisconsin Administrative Code section DHS 106.03(8) provides, in pertinent part, that "[i]f a [hospital] treats a [patient] for injuries or illness sustained in an event for which liability may be contested ... the [hospital] may elect to bill [Medicaid] for services provided without regard to the possible liability of another party .... The [hospital] may alternatively elect to seek payment by joining in the [patient's] personal injury claim ..., but in no event may the [hospital] seek payment from both [Medicaid] and a personal injury ... claim. Once a [hospital] accepts the [Medicaid] payment for services provided to the [patient], the [hospital] shall not seek or accept payment from the [patient's] personal injury ... claim." Many of the statutes, regulations, and judicial opinions that we discuss refer generally to "health care providers." We paraphrase "providers" as "hospitals" in the interest of clarity, consistency, and specificity to the facts at hand. For the same reasons, we refer to "patients" where other authorities characterize individuals who receive healthcare services with the term "recipients."

holding that St. Joseph's liens did not constitute "direct charges" upon the Gisters. The circuit court likewise rejected the Gisters' contention that St. Joseph's liens were invalid under *Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 597 N.W.2d 462 (Ct. App. 1999), distinguishing that decision because *Dorr* involved patients protected by contractual and statutory immunity as a result of their Health Maintenance Organization ("HMO"). The Gisters appealed.

¶ 6. In an unpublished, per curiam opinion, the court of appeals reversed and remanded. *Gister v. Am. Family Mut. Ins. Co.*, No. 2009AP2795, unpublished slip op. (Wis. Ct. App. Nov. 11, 2010). Applying *Dorr*, the court of appeals concluded that a lien upon a settlement between a tortfeasor and a patient is, in effect, a lien against the patient, and therefore requires a debt owed by the patient to the hospital. *Id.*, ¶ 13. In light of that reasoning, the court of appeals determined that Medicaid bore the debt to St. Joseph's, not the Gisters, and since a lien against the settlement was a lien against the Gisters it was therefore impermissible. *Id.*, ¶¶ 14–15. The court of appeals rejected St. Joseph's argument that Wis. Admin. Code § DHS 106.03(8)(allowing hospitals to either bill Medicaid or join personal injury lawsuits when liability "may be" contested) provided authority for the liens. *Id.*, ¶¶ 18–20. According to the court, § 106.03(8) said nothing about seeking payment from third-party liability settlements, nor did it demonstrate that the Gisters owed a debt to the hospital, and the court concluded that the provision had no bearing on the validity of St. Joseph's liens. *Id.* Consequently, the court of appeals reversed and remanded the cause to the circuit court with directions to issue an order holding St. Joseph's liens invalid. *Id.*, ¶ 22.

¶ 7.   We granted St. Joseph's petition for review and now reverse.

### III.   STANDARD OF REVIEW

■

¶ 8.   When a circuit court's ruling on motions for declaratory judgment depends on questions of law, we review the ruling de novo. *J.G. v. Wangard,* 2008 WI 99, ¶ 18, 313 Wis. 2d 329, 753 N.W.2d 475. There were no disputed issues of fact at the circuit court, and the circuit court's decision rested on its interpretation of statutes, regulations, and case law. These are all legal questions and we therefore review the ruling de novo, while benefiting from our own prior analyses and those of the lower courts. *State v. Henley,* 2010 WI 97, ¶ 29, 328 Wis. 2d 544, 787 N.W.2d 350, *cert. denied,* 565 U.S. __, 132 S. Ct. 784 (2011).

### IV.   STATUTORY INTERPRETATION

■

¶ 9.   We are called upon to interpret and harmonize a variety of statutes and regulations. When conducting such interpretations, we begin with certain background principles in mind. We must give language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Circuit Court for Dane Cnty.,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Our analysis is also guided by the context and structure of the statute under consideration. *Id.,* ¶ 46. Examining statutes in light of their context, we strive to avoid "absurd or unreasonable results." *Id.* At all times, we

endeavor to ascertain meaning, not to "search for ambiguity." *Id.,* ¶ 47. Where, as here, the statutes are unambiguous, we need not consult extrinsic sources, such as legislative history. *Id.,* ¶ 50. Instead, we look only to the plain language, purpose, context, and structure of the statutes. *Id.,* ¶ 51.

## V. DISCUSSION

¶ 10.    There is no contention here that St. Joseph's liens were improperly filed under the hospital lien statute.[7] Therefore, the only question is whether they were barred by some other authority.

¶ 11.    The Gisters propose two such authorities. First, they argue that Wis. Stat. § 49.49(3m)(a) bars St. Joseph's liens because they constitute "direct charges" imposed by a hospital on Medicaid-eligible patients. Second, they submit that *Dorr* forbids St. Joseph's liens, chiefly because, under *Dorr,* the Gisters' eligibility for Medicaid means that the family did not owe St. Joseph's a debt and a lien against the settlement with American Family (in effect, according to the Gisters, a lien against them) is therefore impermissible. We treat each conten-

---

[7] The dissent insufficiently addresses this point. Instead, it presents a slippery-slope argument, asking "what other property belonging to a Medicaid recipient could the hospital seek?" Dissent, ¶ 74. This approach neglects the fact that the sole authority for the liens in question is the hospital lien statute, which carefully circumscribes the kinds of property a hospital can seek in such circumstances. *See* Wis. Stat. § 779.80(2) (making clear that hospital liens attach only "to any and all rights of actions, suits, claims, demands and upon any judgment, award or determination and upon the proceeds of any settlement which such injured person, or legal representative might have against any such person for damages on account of such injuries . . . .").

tion in turn and find neither persuasive. In particular, we hold that St. Joseph's liens were fully consistent with federal law and thus, to the extent Wis. Stat. § 49.49(3m)(a) incorporates federal law, the statute does not bar the liens and Wisconsin Medicaid is in compliance with the federal requirements. We further hold that to the extent § 49.49(3m)(a) imposes an additional requirement to federal law, the statute likewise does not bar St. Joseph's liens. Finally, we hold that *Dorr* does not control because it dealt with different factual and legal circumstances. Accordingly, we conclude that St. Joseph's liens were permissible.

### A. Wisconsin Stat. § 49.49(3m)(a) Does Not Bar St. Joseph's Liens

¶ 12.   The Gisters submit that St. Joseph's liens constituted "direct charges" by a hospital levied upon a Medicaid-eligible patient, and are therefore invalid under Wis. Stat. § 49.49(3m)(a). We conclude, to the contrary, that St. Joseph's liens were consistent with federal law and with the plain language of § 49.49(3m)(a). In support of our conclusion, we also show how our interpretation of § 49.49(3m)(a) best harmonizes the provision with related regulations. As a result, we hold that § 49.49(3m)(a) did not bar St. Joseph's liens.

### 1. The Framework of Medicaid and Third Party Liability

¶ 13.   Although there is no federal cause of action asserted in the case at bar, federal law provides the appropriate framework to analyze the case because it

507

defines many of Wisconsin Medicaid's features and obligations. With that in mind, we begin with an overview of Medicaid and of its provisions for the collection of medical expenses where there is potential third party liability, as that overview sets the stage for our consideration of the liens at issue here.

¶ 14. The federal and state governments jointly fund and manage Medicaid, *Harris v. McRae,* 448 U.S. 297, 301 (1980), a program created to provide health care to the indigent. 42 U.S.C. § 1396. Medicaid is an exercise in so-called "cooperative federalism," whereby states voluntarily opt into the federal scheme and thereby bind themselves to abide by the rules and regulations imposed by the federal government in return for federal funding. *Harris,* 448 U.S. at 308. The State of Wisconsin has joined the federal Medicaid system, and has consequently committed itself to following the federal law governing that system. *Ellsworth v. Schelbrock,* 2000 WI 63, ¶ 10, 235 Wis. 2d 678, 611 N.W.2d 764. Absent a showing to the contrary, we presume that Wisconsin follows the federal rules it has pledged to uphold. *See Rathie v. Ne. Wisconsin Technical Inst.,* 142 Wis. 2d 685, 694, 419 N.W.2d 296 (Ct. App. 1987) ("declin[ing] to render [a] federal [a]ct superfluous or put [a state] institution in the precarious position of choosing between violating [state law]. . . or losing presumably essential federal funding.").

¶ 15. The federal government requires states participating in Medicaid to institute "third party liability . . . programs" designed to "ensure that Federal and State funds are not misspent for covered services to eligible Medicaid recipients when third parties exist that are legally liable to pay for those services." Medicaid Programs; State Plan Requirements and Other

Provisions Relating to State Third Party Liability Programs, 55 Fed. Reg. 1423, 1423–24 (1990). Such programs must set forth methods for discovering when third parties are legally obligated to pay for medical expenses covered by the plan. 42 U.S.C. § 1396a(25)(A). They must also establish a system for pursuing third party funds where they are available. 42 U.S.C. § 1396a(25)(B).

2.   Federal Law does not Bar St. Joseph's Liens

■

¶ 16.   Of the federal regulations concerning third party liability, the most important to this litigation is 42 U.S.C. § 1396a(25)(C). That provision requires state Medicaid plans to ensure

> that in the case of an individual who is entitled to medical assistance under the State plan with respect to a service for which a third party is liable for payment, the person furnishing the service may not seek to collect from the individual (or any financially responsible relative or representative of that individual) payment of an amount for that service (i) if the total of the amount of the liabilities of third parties for that service is at least equal to the amount payable for that service under the plan . . . .

§ 1396a(25)(C). In other words, hospitals "may not seek to collect [money] from [Medicaid-eligible] individuals where third parties are obliged to pay an amount at least equal to the amount that would be paid by Medicaid for the service."[8] *Wesley Health Care Ctr., Inc. v. DeBuono,* 244 F.3d 280, 281 (2d Cir. 2001).

---

[8] Health care providers are permitted by federal law to "charge Medicaid beneficiaries certain nominal cost-sharing amounts" so as "to prevent beneficiary over-utilization of health

¶ 17.  Accordingly, a threshold question is whether liens such as St. Joseph's (that is, attaching to settlements between tortfeasors' insurers and Medicaid-eligible patients) constitute efforts "to collect from" the patient. If they do not, then 42 U.S.C. § 1396a(25)(C)'s limitations on such efforts, and the parallel Wisconsin provision enacted to ensure Wisconsin's compliance with the federal mandate, discussed below, do not come into play and our analysis can end there. If St. Joseph's liens do constitute efforts to "collect from" the Gisters, then we must examine the content of § 1396a(25)(C) more closely to determine whether it bars the liens.

¶ 18.  Both case law and logic indicate that St. Joseph's liens must be considered an effort "to collect from" the patients.[9] First, federal appellate decisions in this area of law have either assumed, *Miller v. Gorski Wladyslaw Estate*, 547 F.3d 273, 282 (5th Cir. 2008), or outright held that a lien directed at a future settlement between a tortfeasor and a Medicaid-eligible patient

care services covered under Medicaid by imposing a nominal payment obligation on beneficiaries." *Olszewski v. Scripps Health,* 69 P.3d 927, 941 (Cal. 2003) (internal quotation marks, citations, and brackets removed). Similarly, Wisconsin Medicaid allows for the billing of Medicaid-eligible patients under certain circumstances. *See* Wis. Admin. Code DHS § 106.03(7)(d) ("[I]f . . . another health care plan makes payment to the recipient or another person on behalf of the recipient, the provider may bill the payee for the amount of the benefit payment and may take any legal action to collect the amount of the benefit payment from the payee . . . .").

[9] It should be observed that the liens represent an effort to "collect from" the Gisters only in the sense that they do not target any other entity (such as a tortfeasor or his insurer), not in the sense that they go directly to the patients themselves, rather than to a settlement. *See* note 15 *infra.*

510

represents an attempted recovery against the patient, not against the tortfeasor (or his insurer). *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Trust,* 410 F.3d 304, 318 (6th Cir. 2005) ("[B]y seeking to enforce its lien, Spectrum is attempting to recover its customary fee *from the Medicaid patient herself* . . . .") (emphasis added). As the Sixth Circuit persuasively reasoned in *Spectrum,* the lien attaches only once the settlement is approved; and once the settlement is approved, the money belongs to the patient, not the tortfeasor (or, here, his insurer). *Id.; see also Olszewski v. Scripps Health,* 69 P.3d 927, 943 (Cal. 2003) ("Recovery on a [healthcare] provider lien [against a settlement between a Medicaid-eligible patient and a tortfeasor] therefore comes from the [Medicaid] beneficiary—and not from the third party tortfeasor—for purposes of federal law."). In addition, of course, the only reason the hospital has a lien in the first place is because it provided medical services to the patient (not some other entity) and because the patient (not some other entity) therefore owes it a debt. *See* ¶ 52 *infra.* It therefore makes no sense to regard the lien as "collecting" from anyone other than the patient, and the federal rule is consequently implicated.

¶ 19. Having answered in the affirmative the threshold question of whether St. Joseph's liens were an effort "to collect from" the Gisters, and thus subject to the federal rule, we are now required to determine whether or not the rule bars the liens. To reach that determination, it is instructive to consider federal cases dealing with similar issues.

¶ 20. Several federal courts of appeals have issued published decisions concerning liens similar to St. Joseph's. *Miller,* 547 F.3d 273; *Spectrum,* 410 F.3d 304; *Evanston Hosp. v. Hauck,* 1 F.3d 540, 543–44 (7th Cir.

511

1993). In each of those cases, the courts upheld the validity of the liens in question. *Miller* is the most factually similar case, and therefore offers the most helpful guidance here.

¶ 21.   In *Miller,* Jose Alfaro ("Alfaro"), an individual who later became eligible for Medicaid, was injured when his car and a truck collided in Louisiana. 547 F.3d at 276. He received care at Baton Rouge General Medical Center ("Baton Rouge General"). *Id.* While hospitalized, he filed a federal lawsuit against the truck company seeking damages for the injuries he sustained in the crash. *Id.* Baton Rouge General then filed a lien pursuant to Louisiana state law to recover its medical expenses from any future settlement or judgment Alfaro received from the truck company. *Id.* Baton Rouge General later intervened in Alfaro's lawsuit, which was resolved through settlement. *Id.* At that point, Baton Rouge General filed a motion for partial summary judgment to recover the expenses it incurred in treating Alfaro. *Id.* A magistrate judge granted that motion. *Id.* at 277.

¶ 22.   On appeal, the Fifth Circuit affirmed. *Id.* at 276. The court began with the proposition that federal law "requires that each state's Medicaid agency take measures to find out when third parties . . . are legally obliged to pay for services covered by Medicaid." *Id.* at 278. *Miller* observed that Louisiana incorporated this federal mandate into its state code by requiring the state Medicaid agency to seek out and collect money from third parties liable for injuries to Medicaid-eligible patients. *Id.* at 279.

¶ 23.   Turning to the validity of Alfaro's liens, the Fifth Circuit took up Alfaro's argument that "a health care provider cannot seek to collect payments from that patient if a third party is liable for the patient's medical

expenses." *Id.* at 282. The court rejected this argument because "[c]ase law uniformly indicates that the limitations on provider reimbursement are triggered ... when a provider elects to bill[,] and accepts payment from[,] Medicaid for the services it provides to the patient." *Id.* (citations omitted).

¶ 24.   Elaborating on its reasoning, the Fifth Circuit noted that 42 U.S.C. § 1396a(25)(C) was designed to proscribe the practices of "balance" and "substitute" billing. *Id.* at 282–83. "Balance billing" occurs when a hospital bills Medicaid, receives reimbursement for less than the requested amount, and then seeks to recover from the patient the difference between the medical expenses charged and the reimbursement from Medicaid. *Id.* at 282–83. "Substitute billing" takes place when a hospital bills Medicaid, is dissatisfied with the size of the reimbursement, and therefore tries to return the payment in order to charge the patient a larger amount than it received from the government. *Id.* at 283. As such, the Fifth Circuit held in *Miller,* the prohibition in § 1396a(25)(C) is triggered only when a hospital submits a bill to Medicaid. *Id.* ("Logically, a provider cannot attempt to engage in 'balance billing' or 'substitute billing' unless it has initially billed Medicaid"); *see also Spectrum,* 410 F.3d at 315 ("*Having chosen to accept payment from Medicaid* however, Spectrum abandoned all rights to further recovery of its customary fee from the lien.") (emphasis added); *cf. Evanston Hospital,* 1 F.3d at 543–44.[10]

---

[10] It is equally well established that states are permitted under federal law to *require* hospitals to pursue expenses from liable third parties before billing Medicaid. *See Miller v. Gorski Wladyslaw Estate,* 547 F.3d 273, 280 n.6 (5th Cir. 2008) (collecting cases). Although Wisconsin *permits* that practice (in the form of allowing hospitals to join personal injury lawsuits),

¶ 25.   As required by federal law, Wisconsin incorporated a parallel provision to 42 U.S.C. § 1396a(25)(C) in its Medicaid plan. That provision states that "[n]o [hospital] may knowingly impose upon a [Medicaid-eligible patient] charges in addition to payments received for services under ss. 49.45 to 49.471[11] . . . except under" several limited exceptions.[12] Wis. Stat. § 49.49(3m)(a). In accordance with the federal appellate decisions cited above, this provision comes into play only when a hospital bills Medicaid. Indeed, by its plain terms, a hospital cannot impose charges "in addition to" receiving payments from Medicaid if it never receives any payments from Medicaid. No one alleges that St. Joseph's received payments from Medicaid for the expenses sought in the challenged liens. Accordingly, we hold that the "in addition to" provision of § 49.49(3m)(a), a codification of federal law whose purpose is illuminated by federal judicial opinions, does not bar St. Joseph's liens. As a result, St. Joseph's liens are fully in compliance with 42 U.S.C. § 1396a(25)(C).

### 3.   State Law does not Bar St. Joseph's Liens

¶ 26.   If Wisconsin law incorporated only what 42 U.S.C. § 1396a(25)(C) demanded, our analysis could end with *Miller* and the other well-reasoned federal appellate decisions discussed above. However, Wisconsin law

---

rather than requiring it, *see* Wis. Admin. Code § DHS 106.03(8), such case law nevertheless indicates that Wisconsin's system is in conformity with federal law in this regard.

[11] The referenced sections comprise a portion of the Wisconsin statutes dealing with medical assistance. The Gisters were treated by St. Joseph's under provisions within this section.

[12] The exceptions are not relevant to the facts of this case.

goes beyond the requirements mandated by federal law. For unlike § 1396a(25)(C), Wis. Stat. § 49.49(3m)(a) contains a third party liability provision that *does* come into play, by its plain terms, even where the hospital never bills Medicaid.

¶ 27. There are two prohibitions in Wis. Stat. § 49.49(3m)(a). The first, discussed above, prohibits hospitals from "knowingly impos[ing] upon a [Medicaid-eligible patient] charges in addition to payments received" from Medicaid. The second prohibits hospitals from "knowingly impos[ing] direct charges upon a [patient] in lieu of obtaining payment" from Medicaid. Just as a hospital can impose charges "in addition" to billing Medicaid only when it, at some point, bills Medicaid, a hospital can impose charges "in lieu" of billing Medicaid only if it *does not* bill Medicaid. *See Shorter Oxford English Dictionary* 1014 (6th ed. 2007) (defining "in lieu of" as "[i]n place of; instead of"). That is, a hospital cannot impose charges *instead of* billing Medicaid if it submits a bill to Medicaid. Stated differently, the "in lieu of" provision, unlike 42 U.S.C. § 1396a(25)(C) and its Wisconsin analogue (i.e., the "in addition to" provision), speaks to a circumstance in which the hospital elects *not* to submit a bill to Medicaid.

¶ 28. Thus, Wisconsin's prohibition on directly billing Medicaid-eligible patients "in lieu of" accepting payments from Medicaid imposes an additional requirement not mandated by federal law, and one which therefore must be analyzed under a separate rubric from that provided by the federal case law.[13] *Miller,* 547 F.3d at 284 ("[I]t is clear that the limitations on a health

---

[13] It is important to note that the following analysis does not disturb our prior holding that Wisconsin is in compliance with federal law. Because federal law imposes restrictions only once Medicaid is billed, and because St. Joseph's never billed

care provider's ability to obtain reimbursement for the services it provides a Medicaid-eligible patient are not triggered until a provider bills and accepts payment from Medicaid for those services."); *see also Spectrum,* 410 F.3d at 315 (same); *Evanston Hosp.,* 1 F.3d at 543–44 (same). Consequently, these federal cases deal with distinct provisions, and therefore do not entirely resolve the matter at hand. Furthermore, because St. Joseph's never submitted a bill to Medicaid for the medical expenses sought in the challenged liens, we must consider the "in lieu of" provision in this case.

¶ 29. Under a plain language analysis, we conclude that St. Joseph's liens do not violate the "in lieu of" provision of Wis. Stat. § 49.49(3m)(a).

¶ 30. We begin with the "common, ordinary, and accepted meaning" of the disputed words.[14] *Kalal,* 271 Wis. 2d 633, ¶ 45. The plain language of the second

---

Medicaid for the expenses sought in the challenged liens, its actions were fully consistent with federal law, and Wis. Stat. § 49.49(3m)(a) completely satisfies Wisconsin Medicaid's obligations to the federal government.

[14] Rather than considering the plain language of the statutory provisions at issue in the case, the dissent conducts its analysis by asking what the law "authorizes," and then looking for the answer to that question by consulting only the statutes and regulations relating to Medicaid while ignoring the hospital lien statute. Dissent, ¶ 78 ("The law governing Wisconsin's Medicaid program does not authorize any third option."); ¶ 82 ("The option embraced by the majority is not authorized by the law governing Wisconsin's Medicaid program."). We do not understand this approach. There is no ambiguity as to the "authorization" in the law for St. Joseph's liens: it is the hospital lien statute. The question is whether some other authority *prohibits* the liens. It is unsurprising that the dissent finds no "authorization" for the liens when it searches everywhere for such authorization except the statute that declares the authorization by its very title.

516

prohibition in Wis. Stat. § 49.49(3m)(a) includes two requirements: that the charges be "direct" and that they be imposed "in lieu of" charges paid by Medicaid. *American Heritage Dictionary* defines "direct," in the most relevant definition, as "proceeding without interruption in a straight course or line; not deviating or swerving." *The American Heritage Dictionary of the English Language* 527 (3d ed. 1992). Applying this definition to § 49.49(3m)(a), the provision should be construed to prohibit charges that "proceed in a straight course or line, without deviating or swerving," to the patient.

¶ 31.   Contrary to the Gisters' argument, an examination of the language of the hospital lien statute demonstrates that the liens filed by St. Joseph's did not constitute the "direct charges" proscribed by Wis. Stat. § 49.49(3m)(a). Liens filed pursuant to the hospital lien statute "attach to any and all rights of action, suits, claims, demands, and upon any judgment, award or determination and upon the proceeds of any settlement." § 779.80. In other words, the hospital lien statute allows, under certain circumstances, for a direct recourse to the various *actions* undertaken by the patient (i.e., the suits, claims, demands, etc.). At the same time, it must be emphasized that the hospital lien statute does not permit a direct recourse to the patient himself. *Cf. Cullimore v. St. Anthony Med. Ctr.,* 718 N.E.2d 1221, 1224 (Ind. Ct. App. 1999) (noting that Indiana's hospital lien statute gives a hospital "a *direct* right in the *insurance proceeds and other settlement funds* which are paid to the patient by the person claimed to be liable for the patient's injuries . . . .") (emphasis added).[15] In this regard, St.

_____

[15] In the interest of clarity, it is helpful to briefly address the distinction between the proposition expressed in this section—that St. Joseph's liens do not constitute a "direct charge" against

Joseph's liens can be analogized to an *in rem* action, which "is directed against . . . *property* and seeks a judgment as against the world with respect to the *property* that is the subject of the action." *In re Return of Property in State v. Glass,* 2001 WI 61, ¶ 16, 243 Wis. 2d 636, 628 N.W.2d 343 (footnote omitted) (emphasis added); *see also Jayko v. Fraczek,* 966 N.E.2d 1121, ¶ 23 (Ill. Ct. App. 2012) (holding that a health care

the Gisters because they attach to the settlement, not the Gisters themselves—and the proposition expressed in ¶ 18 *supra*—that St. Joseph's liens constitute an effort by St. Joseph to "collect from" the Gisters. The question presented in the "collect from" context, discussed in ¶ 18, is whether St. Joseph's liens were directed at any other party. *See Olszewski,* 69 P.3d at 943 ("Recovery on a [healthcare] provider lien [against a settlement between a Medicaid-eligible patient and a tortfeasor] therefore comes from the [Medicaid] beneficiary—*and not from the third party tortfeasor*—for purposes of federal law.") (emphasis added). That issue is merely a federal threshold question as to whether 42 U.S.C. § 1396a(25)(C) applies to the liens. Because it is well-settled as a matter of federal law that a lien filed against a settlement between a tortfeasor and a patient is an effort to "collect from" the patient, *id.; Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Trust,* 410 F.3d 304, 318 (6th Cir. 2005), we have concluded that St. Joseph's liens were an effort to "collect from" the Gisters. However, because the prohibition in § 1396a(25)(C) is triggered only when Medicaid is billed, and because St. Joseph's never billed Medicaid for the expenses sought in the challenged liens, we have also concluded that St. Joseph's liens did not violate federal law.

By contrast, the question addressed in this section is whether the liens filed by St. Joseph's constitute a "direct charge" upon the patient. That question is purely a matter of state law with no bearing on the federal question discussed above. Our analysis of that question focuses on the fact that St. Joseph's liens were directed at a potential settlement, not at the Gisters themselves, and thus did not constitute a "direct charge" imposed upon the Gisters.

provider's lien on a personal injury action settlement was an *in rem* proceeding).[16]

¶ 32.   Our conclusion is substantially bolstered by the context of the prohibition. *Kalal*, 271 Wis. 2d 633, ¶ 46 (reminding that statutory context shapes a plain language analysis). Wisconsin Stat. § 49.49(3m)(a) provides that "[n]o provider may knowingly impose upon a recipient *charges* in addition to payments received for services under [Medicaid] or knowingly impose *direct charges* upon a recipient in lieu of obtaining payment under [Medicaid] . . . ." (emphasis added). The first clauses of each of the two prohibitions in Wis. Stat. § 49.49(3m)(a) are strikingly similar in form: both preclude hospitals from "knowingly imposing charges upon" Medicaid-eligible patients under certain circumstances. Notably, the legislature made a point of inserting the word "direct" into the second clause, in contrast to the first.

■

¶ 33.   Where the legislature includes a word in one provision and omits it from a similar, parallel provision within the same statute, we are even more reluctant to diminish the independent significance of the word. *Cf. Graziano v. Town of Long Lake*, 191 Wis. 2d 812, 822, 530 N.W.2d 55 (Ct. App. 1995) ("[W]here the legislature uses similar but different terms in a statute, particularly within the same section, we may presume it intended the terms to have different meanings.") (citing *Armes v. Kenosha Cnty.*, 81 Wis. 2d 309, 318, 260 N.W.2d 515 (1977)).

---

[16] In their initial complaint, the Gisters did not argue that St. Joseph's liens constituted "direct charges," they argued that the liens "have the same effect" as such charges. Thus, even under the Gisters own original argument, St. Joseph's liens were consistent with the plain language of Wis. Stat. § 49.49(3m)(a).

¶ 34.    It is not difficult to understand what "direct charges" look like. *See generally State v. Jackman,* 60 Wis. 2d 700, 707–08, 211 N.W.2d 480 (1973) (holding that a registration fee was not a direct charge). In the medical context, a hospital directly charges a patient when it sends a bill *to the patient. See, e.g., Humana, Inc. v. Jacobson,* 804 F.2d 1390, 1392 (5th Cir. 1986) (discussing a doctor who threatened to "send bills directly to Medicare patients," rather than billing Medicare). The Hospital did not to do so here, but rather filed liens against the Gisters' potential settlements with American Family. Accordingly, we conclude that St. Joseph's liens did not constitute "direct charges upon" the Gisters, and that they were therefore permissible under the plain language of the second prohibition in Wis. Stat. § 49.49(3m)(a).

4.    Reading Wis. Stat. § 49.49(3m)(a) to Permit
St. Joseph's Liens Best Harmonizes the Provision
with Wis. Admin. Code § DHS 106.03(8)

¶ 35.    Our duty, if possible, is to harmonize Wis. Stat. § 49.49(3m)(a) with other relevant regulations. *DaimlerChrysler v. LIRC,* 2007 WI 15, ¶ 10, 299 Wis. 2d 1, 727 N.W.2d 311 ("When an administrative agency promulgates regulations pursuant to a power delegated by the legislature, we construe those regulations together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason.") (internal quotation marks and citation omitted).

¶ 36.    The parties contend, and we agree, that the most relevant regulation here is Wis. Admin. Code § DHS 106.03(8)(allowing hospitals to either bill Med-

icaid or join personal injury lawsuits when liability may be contested).[17] We conclude that our reading of Wis. Stat. § 49.49(3m)(a) as permitting the liens is the interpretation most consistent with Wis. Admin. Code. § DHS 106.03(8).

¶ 37. Wisconsin Admin. Code § DHS 106.03(8) permits hospitals to either bill Medicaid or join personal injury lawsuits when liability may be contested. The Gisters argue that St. Joseph's liens imposed a direct charge upon them, in violation of Wis. Stat. § 49.49(3m)(a). If they are right, and if Wis. Admin. Code § DHS 106.03(8) is valid, a perverse result follows. This is so because, under the Gisters' interpretation of the regulatory scheme, St. Joseph's imposes an impermissible "direct charge" on them in violation of § 49.49(3m)(a) when it files liens against their potential settlements with American Family *before* any personal injury lawsuit is filed, but somehow does not run afoul of § 49.49(3m)(a) when it joins in the lawsuit *after* it is filed. We cannot subscribe to the Gisters' interpretation. Regardless of whether St. Joseph's files a lien against a future settlement or joins in a lawsuit, the money being sought originates from the same source (American Family), goes to the same recipients (the Gisters and St. Joseph's), and is designated for the same purpose (to satisfy the medical expenses incurred by the Gisters after the accident). We see no rationale as to why St. Joseph's action would be a "direct charge" in one cir-

---

[17] The parties debate the relevance of several other statutes and regulations. Most extensively, they discuss Wis. Stat. § 49.46(2)(d), which prohibits state Medicaid agencies from authorizing payments for medical costs "payable through 3rd-party liability." Our decision does not require us to construe this provision, nor do we find anything in our opinion that conflicts with its prohibition. Accordingly, we do not address it.

cumstance and not the other.[18] In short, it is permissible for St. Joseph's to pursue the funds by joining the lawsuit, and it is therefore permissible for St. Joseph's to pursue the funds through liens.[19] Consequently, harmonizing Wis. Stat. § 49.49(3m)(a) with Wis. Ad-

[18] The dissent characterizes our opinion as relying "on the premise that there is no difference between joining a lawsuit and imposing a lien on the money recovered from that lawsuit." Dissent, ¶ 83. As an initial matter, our decision does not rely on a comparison of the two actions (joining a lawsuit and imposing a lien on a settlement), it simply cites the former as support for our conclusion that the liens are permissible. This conclusion stands independently, as we show, on a plain language analysis of Wis. Stat. § 49.49(3m)(a). By contrast, the dissent appears to rely on administrative regulations as defining the parameters of St. Joseph's legal options, whereas our primary focus remains on *statutes* (both the hospital lien statute and § 49.49(3m)(a)). Because a regulation is invalid if it contravenes a statute, *see, e.g., Seider v. O'Connell,* 2000 WI 76, ¶ 26, 236 Wis. 2d 211, 612 N.W.2d 659, we believe it is more appropriate to consider first the relevant statutes and then the relevant regulations. Finally, we do not suggest that there is "no difference" between joining a lawsuit and imposing a lien on a settlement; rather, we merely point out that it would make little sense to permit one while prohibiting the other.

[19] At the circuit court, the Gisters argued that Wis. Admin. Code § DHS 106.03(8) was invalid because it conflicted with Wis. Stat. § 49.49(3m)(a). They do not urge that argument here, so we consider it abandoned and need not address it. *See State v. Young,* 2009 WI App 22, ¶ 15 n.6, 316 Wis. 2d 114, 762 N.W.2d 736 (declining to address an argument raised at the circuit court and abandoned on appeal). We do note that in light of our conclusion that St. Joseph's liens were not violative of § 49.49(3m)(a), that statute and Wis. Admin. Code § DHS 106.03(8) can be naturally and reasonably harmonized, and any suggestion that the two are in irreconcilable conflict is therefore meritless. *See Law Enforcement Standards Bd. v. Vill. of Lyndon Station,* 101 Wis. 2d 472, 489, 305 N.W.2d 89 (1981) ("An administrative rule should

min. Code § DHS 106.03(8) compels us to conclude that St. Joseph's liens were valid.[20]

¶ 38. In summary, we hold that Wis. Stat. § 49.49(3m)(a) does not bar St. Joseph's liens because the liens do not constitute "direct charges upon" the Gisters and because this result best comports with the related regulations.[21] We turn now to the Gisters' other submitted authority for voiding the liens: the court of appeals' decision in *Dorr*.

### B. *Dorr* Does not Bar St. Joseph's Liens

¶ 39. We conclude that *Dorr* does not prevent St. Joseph's from filing the liens. *Dorr* is legally and factu-

---

ordinarily be given that construction which will, if possible, sustain its validity.") (internal quotation marks and citation omitted).

[20] Because it is not necessary to do so in order to resolve this matter, we do not reach St. Joseph's contention that, when it filed its liens, it constructively joined a personal injury lawsuit initiated by the Gisters against American Family.

[21] The dissent disagrees with our holding that the liens do not constitute "direct charges" imposed on the Gisters for purposes of state law on the grounds that we also acknowledge that the liens are an attempt to "collect from" the Gisters under federal law. Dissent, ¶¶ 73–74. In the dissent's view, the distinction is problematic because it may allow hospitals to seek other property from Medicaid-eligible patients. *Id.*, ¶ 74 ("[W]hat other property belonging to a Medicaid recipient could the hospital seek?"). However, as we have noted, the hospital lien statute, the sole authority for St. Joseph's liens, carefully limits the types of property that can be sought in such circumstances. *See* Wis. Stat. § 779.80(2) (making clear that hospital liens attach only "to any and all rights of actions, suits, claims, demands and upon any judgment, award or determination and upon the proceeds of any settlement which such injured person, or legal representative might have against any such person for damages on account of such injuries . . . .").

ally distinguishable from the case under consideration because it involved patients protected by contractual and statutory immunity as the result of an HMO. Consequently, the decision does not control this case. Moreover, we limit *Dorr* to its facts and expressly reject any interpretation of the decision that finds in it broadly applicable principles of law regarding hospital liens.

### 1. Dorr is Factually and Legally Distinguishable From this Case

¶ 40.   We conclude that *Dorr* is factually and legally distinct from the case before us, and therefore does not dictate its result. To explain why *Dorr* is distinguishable, we begin with an overview of its facts.

¶ 41.   In *Dorr*, an individual ("Mrs. Dorr") was injured in a car crash and received treatment at Sacred Heart Hospital ("Sacred Heart"). 228 Wis. 2d at 432. Mrs. Dorr and her husband ("the Dorrs") had medical insurance coverage through an HMO, which had a contract with Sacred Heart. *Id.* at 430. Under the terms of the contract, Sacred Heart was required to provide medical services to Mrs. Dorr at an agreed-upon rate. *Id.* The contract also contained a "hold harmless" clause, by which Sacred Heart agreed not to bill, or hold liable, the HMO's subscribers for expenses covered by the contract. *Id.* at 433. In addition, Sacred Heart bound itself in the "hold harmless" provision to accept the statutory immunities conferred by Wis. Stat. § 609.91[22] ("HMO immunity statute") upon any of the HMO's subscribers and not claim any statutory exemp-

---

[22] Wis. Stat. § 609.91 (1998–99) provided, in pertinent part, that, with limited exceptions that were not relevant in *Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 597 N.W.2d 462 (Ct. App.

tions from those immunities. *Id.* Rather than billing the HMO, Sacred Heart filed a lien on the insurance proceeds that the Dorrs would later collect. *Id.*

¶ 42.  In *Dorr,* the court of appeals began its analysis by examining whether the hospital lien statute "permits the filing of a lien without an underlying debt," as the court understood Sacred Heart to be arguing. *Id.* Relying upon *Black's* and prior precedent, the court concluded in *Dorr* that the hospital lien statute "requires the existence of an obligation due the lienholder from the person [to] whose property . . . the lien attaches." 228 Wis. 2d at 438. The *Dorr* court found support for its ruling in the plain language of the hospital lien statute, which the court read to confirm its view that the statute "not only contemplates the existence of a debt underlying the lien but also that the debt's obligor is the injured person who received the medical services from the hospital." *Id.* at 439.

¶ 43.  Having established to its satisfaction that a hospital lien requires a debt owed by the patient to the hospital, the court of appeals in *Dorr* next considered how the principle applied to the interaction between the hospital lien statute, the HMO immunity statute, and the HMO's contract with Sacred Heart. The court determined that both the HMO immunity statute and the contract "negate[d] the existence of a debt the Dorrs owe" Sacred Heart, and that the lien was therefore impermissible. *Id.* at 442. Dismissing Sacred Heart's contention that it sought recourse against the tortfeasor (who was not protected by either contractual or statutory immunity) rather than the Dorrs (who were), the court of appeals concluded that the lien statute did

_____

1999) or here, a "policyholder of a[n] [HMO] insurer is not liable for health care costs that are . . . covered under a policy . . . issued by the [HMO]."

not afford any recourse against tortfeasors. *Id.* In light of its analysis, the court of appeals held that "when [the HMO] immunity provisions apply or when a contract between an HMO and hospital contains a hold harmless provision, no hospital lien can be filed against an HMO patient's property because the HMO patient is not indebted to the hospital for the medical services provided." *Id.* at 435.

¶ 44.   As is apparent from the foregoing description of *Dorr,* the only question before the court of appeals in that case was whether Sacred Heart's liens were valid. In concluding that they were not, the court of appeals relied on the fact that the Dorrs were protected by statutory and contractual immunity as a result of their HMO. Indeed, the court of appeals' own recitation of its holding demonstrates that the court was careful not to establish precedent that would be reflexively extended to distinct fact patterns. *See Dorr,* 228 Wis. 2d at 435 ("We conclude that *when [the HMO] immunity provisions apply or when a contract between an HMO and hospital contains a hold harmless provision,* no hospital lien can be filed.") (emphasis added).

¶ 45.   The Gisters did not subscribe to an HMO, and they therefore have no claim to the types of immunity discussed in *Dorr.*[23] Accordingly, we conclude that *Dorr* does not control this case.

---

[23] The dissent states that *Dorr* "squarely addresses the issue at hand in this case." Dissent, ¶ 77. However, the court of appeals in *Dorr* expressed its holding with explicit reference to factual circumstances that are not present here: statutory and contractual immunity as the result of an HMO. *See Dorr,* 228 Wis. 2d at 435 ("We conclude that *when [the HMO] immunity provisions apply or when a contract between an HMO and hospital contains a hold harmless provision,* no hospital lien can be filed.") (emphasis added).

## 2. The Gisters are not Analogous to the Dorrs

¶ 46. The court of appeals below regarded Medicaid-eligible patients such as the Gisters as "closely analogous to the HMO patient in *Dorr.*" *Gister,* No. 2009AP2795, ¶ 14. It reasoned that, "[i]n both cases, the hospital is forbidden from billing the patient, and thus the patient does not owe it a debt. And, in both cases, the hospital can normally obtain payment from a source other than the patient, either from the HMO or [Medicaid]." *Id.* We disagree with the court of appeals and conclude that the analogy is inapt for two reasons.

¶ 47. First, the court of appeals omitted a crucial word from the first sentence of its analogy. St. Joseph's is not "forbidden from billing the patient," it is forbidden from *directly* billing the patient (or, more precisely, from "impos[ing] direct charges upon" the patient). *See* Wis. Stat. § 49.49(3m)(a). It stands to reason, therefore, that the prohibition on direct charges does not automatically signify that the patient owes no debt to St. Joseph's.

¶ 48. In addition to omitting a pivotal word from the first sentence of the analogy, the court of appeals inserted an inaccurate word into the second. In both *Dorr* and this case, the court reasoned, "the hospital can *normally* obtain payment from a source other than the patient, either from the HMO or [Medicaid]." *Gister,* No. 2009AP2795, ¶ 14 (emphasis added). It is true that a hospital in the same position as St. Joseph's can "*normally* obtain payment from a source other than the patient," namely, Medicaid. But a hospital in the same circumstances as Sacred Heart faces a much different set of options. For such a hospital, obtaining payment from a source other than the patient is not the "normal" course of action; it is the only option. That is, Sacred

527

Heart was required by the plain terms of its contract with the HMO and by the plain terms of the HMO immunity statute to collect its charges from the HMO. *Dorr,* 228 Wis. 2d at 433–34.

¶ 49. By contrast, in the absence of such immunities, Wis. Admin. Code § DHS 106.03(8) affords hospitals, at least in some situations, the option of billing Medicaid or joining a patient's personal injury claim. It is thus a very different thing to hold, as a matter of law, that a patient will never owe a debt to a treating hospital when there are two separate and independent grounds, i.e., contractual and statutory immunity, barring the hospital from ever billing (directly or indirectly) the patient, as it is to hold the same when the hospital is not so constricted in how it pursues the payment. For the foregoing reasons, we conclude that *Dorr* is factually and legally distinguishable, and that the patients there are not properly analogized to the Gisters.

3. The Court of Appeals' Broad Reading of *Dorr* is Incorrect

¶ 50. We acknowledge that *Dorr* contains some broad language that militates against the position we take today. It is understandable that the court of appeals in this case regarded that language as barring St. Joseph's liens. We therefore pause to clarify the teaching of *Dorr,* and conclude that the broadest interpretation of its general language regarding hospital liens and settlements should have no precedential weight going forward.

¶ 51. *Dorr's* analysis began with the proposition that a lien "presupposes the existence of a debt." 228 Wis. 2d at 437. That proposition is deeply rooted in our jurisprudence, *see Boorman v. Wisconsin Rotary Engine*

*Co.,* 36 Wis. 207, 212–13 (1874), and widely accepted. *See* 51 Am. Jur. 2d *Liens* § 13 (2011). Our reservations are with how the court of appeals in *Dorr* applied the proposition to the facts of that case.

¶ 52.   The first definition *Black's* offers for "debt" is "[l]iability on a claim; a specific sum of money due by agreement or otherwise." *Black's Law Dictionary* 410 (7th ed. 1999). As soon as Sacred Heart began to treat Mrs. Dorr for her injuries (and as soon as St. Joseph's began to treat the Gisters for theirs) such a debt came into being, as "a specific sum of money became due" by virtue of the medical services rendered. *Cf. Alaska Native Tribal Health Consortium v. Ridley,* 84 P.3d 418, 425 (Alaska 2004)(holding that a healthcare provider could enforce a lien on settlement proceeds between a patient and third-party tortfeasors even when the patient was not personally indebted to the provider because the patient was entitled to free medical care). The maxim that services rendered gives rise to a debt is as old and universal as the maxim that a lien presupposes a debt. *See, e.g., In re Sheldon's Estate,* 120 Wis. 26, 31–32, 97 N.W. 524 (1903) (recognizing that an implied contract ordinarily arises for the reasonable value of services rendered). As a general matter, the rule applies with equal force in the medical context. *See, e.g., Fischer v. Fischer,* 31 Wis. 2d 293, 309–10, 142 N.W.2d 857 (1966) (discussing implied contracts arising between patients and physicians), *overruled on other grounds by Matter of Stromsted's Estate,* 99 Wis. 2d 136, 299 N.W.2d 226 (1980); *see also* 40A Am. Jur. 2d *Payment for Services Provided by Hospital,* § 8 (2011) ("Health care providers and their patients stand in a creditor-debtor relationship. Indeed, a hospital ordinarily is entitled to be compensated for its services, by either an express or an implied contract, and if no

contract exists, there is generally an implied agreement that the patient will pay the reasonable value of the services rendered.").

¶ 53. We recognize that these two principles— that a lien presupposes a debt and that medical services rendered gives rise to a debt—rest together uneasily in the context of hospital liens filed on settlements between patients and tortfeasors or insurers covering their liability, where there is often an entity (whether it be a public medical assistance agency or an HMO) that may be ultimately responsible for paying the bill. Courts have wrestled with the resulting tension in a variety of different ways. *See generally* 16 A.L.R. 5th 262, § 56[a], *Effect of Extinguishment of Lien—On patient's underlying debt* (collecting cases). It is a large and divergent body of law, dealing with many distinctive statutory and contractual issues, and we do not think it necessary or possible to synthesize it into a single, coherent whole.

¶ 54. We do, however, find it useful to glean from the cases the following proposition. Whenever there is any uncertainty or ambiguity in the law as to who will ultimately pay a hospital bill, or as to the extent to which a hospital is prohibited from billing a patient, it does not make sense to regard a debt on the part of a patient owed to a hospital as foreclosed by law for purposes of a hospital lien. One can infer that proposition from the fact that courts have disallowed liens in such circumstances only when there is no doubt that someone other than the patient is responsible for satisfying the debt. *See generally, e.g., Dorr,* 228 Wis. 2d at 435 (finding no debt because of contractual and statutory immunity); *MCG Health, Inc. v. Owners Ins. Co.,* 707 S.E.2d 349, 352–53 (Ga. 2011) (finding that a

medical college could not enforce a lien because regulations gave the federal government the sole right to collect payment for medical care); *Satsky v. United States*, 993 F. Supp. 1027, 1029 (S.D. Tex. 1998) (finding no debt because the insurer already paid the bill in full); *Parnell v. Adventist Health System/West*, 109 P.3d 69, 79 (Cal. 2005) (same). The principle is sensible, as it would be illogical to consider a debt legally impossible for purposes of a lien when that impossibility is not grounded in a legal certainty. Applying this general principle to the case at bar, we hold that a patient's debt to a hospital is extinguished for purposes of a hospital lien placed upon a settlement between a patient and an insurer covering a tortfeasor's liability, if it ever is, only when the following can be accurately said: that the hospital is legally barred from ever billing the patient, either directly or indirectly.

¶ 55. Our conclusion draws support from this court's holdings in related contexts. In *Noer v. G.W. Jones Lumber Co.*, 170 Wis. 419, 175 N.W. 784 (1920), a physician brought a Workmen's Compensation Act ("the Act") claim against an employer for the value of medical services rendered to an employee whose injuries the employer was liable for under the Act. We concluded that the Act (as interpreted by the Industrial Commission) prescribed the amount of money that the employer owed the employee for his injuries, but not the amount of money that the physician could seek from the employee through the courts. *Noer,* 170 Wis. 2d at 422–23. "Under such circumstances," we reasoned, "the reasonable value of the services, as determined by the Industrial Commission, measures the amount which the employer must pay to the [employee] for this item of compensation, but the physician rendering the services is in no manner bound by such determination when he

proceeds to collect from the [employee]. His remedy in the courts is left unimpaired, and he may maintain his action therein for the value of his services as he conceives them to be." *Id.* at 423.

¶ 56. Eighteen years later, we reviewed another workmen's compensation case, this time arising from a conflict between the Act and an insurance policy indemnifying the worker's injuries. *St. Mary's Hosp. & Training Sch. for Nurses of Sisters of Misericordia v. Atlas Warehouse & Cold Storage Co.*, 226 Wis. 568, 277 N.W. 144 (1938). We remarked that "[l]iability does not depend upon to whom credit was extended, but upon who in law was responsible for the payment of the bill. The employee himself was doubtless responsible for payment; the defendant was also responsible for its payment, because the Workmen's Compensation Law . . . made it responsible; and the surety company was also responsible for its payment because of its policy of indemnity to the defendant." *St. Mary's Hosp.*, 226 Wis. at 571.

¶ 57. We take from these decisions the lesson that a debt for medical treatment from a patient to another party should not be rigidly considered extinguished simply because the law may ultimately direct the bill to a different party. Applying that lesson to the instant case, we conclude that St. Joseph's liens should not have been invalidated on the exclusive ground that Medicaid *may* have ultimately paid for the charges.

¶ 58. The utility of our rule is underscored by the circumstances of the present case. If the Gisters had initiated a personal injury lawsuit, St. Joseph's could have joined the action under Wis. Admin. Code § DHS 106.03(8). Because that possibility was still open at the time St. Joseph's liens were filed, it would be irrational to hold, as a matter of law, that St. Joseph's had an

insufficiently definite interest in the funds that American Family might later provide pursuant to a settlement.

¶ 59.   By relying on a broad and rigid interpretation of *Dorr,* the court of appeals side-stepped an analysis of where the debt legally belongs. Instead, the court of appeals required St. Joseph's to present a specific, affirmative grant of authority to justify the creation of an exception to *Dorr. Dorr* cannot sustain such a construction. To the extent that *Dorr* reached any conclusions regarding the permissibility of hospital liens generally, they flow entirely from the court of appeals' determination that the patient *in that case* owed no debt to Sacred Heart. Such a holding says nothing about whether the Gisters owed a debt to St. Joseph's. It does violence to *Dorr*'s holding to regard it, as the court of appeals here did, as always and everywhere imposing a burden on hospitals to justify with specific grants of authority (outside the hospital lien statute) the liens they file against settlements between patients and tortfeasors or insurers covering their liability.

¶ 60.   When a court is presented with a challenge to a hospital lien against a settlement between a patient and a third-party tortfeasor and their insurer, it should ask whether the applicable statutory and regulatory framework permit the lien in light of the specific facts of the case. Part of that analysis will be an examination of whether the possibility of the patient ever owing a debt to the hospital is legally foreclosed in such a way as to render the lien invalid. We have conducted that analysis here, and we conclude that St. Joseph's liens are permissible.[24]

[24] We reiterate that the holding of *Dorr,* properly understood, is not overruled by this opinion. The question presented

## VI.  CONCLUSION

¶ 61.   We are asked to decide whether a charitable hospital may pursue payment for medical care provided to a Medicaid-eligible patient by filing a lien against a settlement between the patient and an insurance company covering the liability of a tortfeasor responsible for the patient's injuries. To answer the question, we have harmonized the complex state and federal legal framework surrounding Medicaid with the hospital lien statute. We conclude that the soundest harmonization of the two permits St. Joseph's liens, and we therefore reverse the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 62. ANN WALSH BRADLEY, J. (*dissenting*). Although the legal framework governing Medicaid is complex, the issues in this case are straightforward. Wisconsin's Medicaid program circumscribes the options available to service providers like St. Joseph's Hospital. Under Wisconsin's Medicaid program, the Gisters are not liable for the cost of their care. To recoup these costs, the hospital has two options. It can bill Medicaid, or it can attempt to recover its charges by joining the Gisters' personal injury lawsuit.

---

in *Dorr* was whether a hospital could file a lien against a settlement between a patient and a tortfeasor when the patient is protected by statutory and contractual immunity as a result of a contract between her HMO and the treating hospital. We do not deal with such immunities in this case, and we therefore do not have occasion to revisit the court of appeals' determination that the lien in *Dorr* was unenforceable. We simply limit *Dorr* to its facts. To the extent the broader language in *Dorr* could be read to conflict with our decision here, we disapprove such an interpretation.

¶ 63. Unfortunately, the majority does not undertake a careful examination of the relevant law. Instead, it embraces a third option, unavailable under the law governing Wisconsin's Medicaid program, which violates the important principles underlying the program. These principles should control the outcome of this case. Because I conclude that the Gisters are entitled to a declaration that the hospital's liens are invalid, I respectfully dissent.

I

¶ 64. Although the majority's discussion is at times difficult to follow, it arrives at the conclusion that the hospital is permitted to impose liens on the Gisters' money settlement with the tortfeasor. On the one hand, for purposes of federal law, it acknowledges that the hospital's liens are an attempt to collect from the Gisters. Majority op., ¶ 18. On the other hand, it concludes just the opposite: that the liens are not an attempt to collect from the Gisters, but rather, they are an attempt to collect the Gisters' money. *See id.,* ¶ 31.

¶ 65. Employing a "plain language" analysis, the majority construes the statutory prohibition against "knowingly imposing direct charges upon a [Medicaid] recipient" as prohibiting only those charges that "proceed[] without interruption in a straight course or line" without "deviating or swerving." *Id.,* ¶ 30. Apparently, the hospital's liens "deviate or swerve" sufficiently to satisfy the majority. Because the hospital did not send a bill to the Gisters, *id.,* ¶ 34, and because the liens are directed at the Gisters' property (that is, their settlement money from the tortfeasor) and not at the Gisters themselves, *id.,* ¶¶ 31, 31 n.15, the majority ultimately concludes that the hospital's liens do not constitute "direct charges."

¶ 66. The majority acknowledges that the Wisconsin Administrative Code permits the hospital to join the Gisters' lawsuit against the tortfeasor, but that same code provision does not expressly authorize the hospital's liens. Nevertheless, it reasons that it would be a "perverse result" if the hospital were not permitted to file a lien. *Id.,* ¶ 37. It appears to conclude that there is no difference between joining a lawsuit and filing a lien because "the money being sought originates from the same source," "goes to the same recipients," and "is designated for the same purpose." *Id.*

¶ 67. Finally, the majority attempts to distinguish *Dorr v. Sacred Heart Hosp.,* 228 Wis. 2d 425, 597 N.W.2d 462 (Ct. App. 1999), by observing that the patients in that case "were protected by statutory and contractual immunity as a result of their HMO." *Majority op.,* ¶ 44. It notes that the Gisters did not subscribe to an HMO, and it concludes that the principles of *Dorr* have no bearing on this case. *Id.,* ¶ 45.

II

¶ 68. Wisconsin Stat. § 779.80 provides that a charitable hospital "shall have a lien for services rendered . . . to any person who has sustained personal injuries as a result of . . . any tort of any other person." The lien "shall attach to" the patient's settlement against the tortfeasor.[1]

¶ 69. If this case did not involve services provided to Medicaid recipients, there would be little doubt that

---

[1] It is important to note that the hospital lien statute was created in 1961, four years prior to the advent of Medicaid. *See* ch. 418, Laws of 1961. Accordingly, when the hospital lien statute was created, the legislature could not have contemplated how its provisions would apply to services provided to Medicaid recipients.

the hospital could impose a lien on any settlement the Gisters received from the tortfeasor. However, the Gisters are Medicaid recipients, and Wisconsin's Medicaid program is highly regulated. Its regulations circumscribe the options available to service providers.

¶ 70.   Determining whether the hospital's liens are valid requires a careful examination of the complex statutes and administrative code provisions governing Wisconsin's Medicaid program.[2] Unfortunately, the majority does not undertake a careful examination of this law, and as a result, it overlooks two important principles underlying Wisconsin's Medicaid program that should control the outcome of this case.

A

¶ 71.   The first principle overlooked by the majority is that a hospital cannot charge Medicaid recipients for services covered by Medicaid. The reason Medicaid recipients cannot be charged is because they are not liable for the cost of these services.

¶ 72.   Wisconsin Stat. § 49.49(3m)(a) establishes that "[n]o provider may knowingly impose upon a recipient charges in addition to payments received [from Medicaid] or knowingly impose direct charges upon a recipient in lieu of obtaining payment [from

---

[2] The relevant statutes are set forth at Wis. Stat. §§ 49.43–49.499. Additionally, the legislature has authorized the Department of Health Services (previously, the Department of Health and Family Services) to administer Medicaid on a statewide level. Wis. Stat. § 49.45(10); Wis. Admin. Code § DHS 101.01. To this end, the department has devised a complex set of regulations governing the rights and responsibilities of Medicaid providers and recipients. *See* Wis. Admin. Code Chs. DHS 100–109.

Medicaid]." The meaning of this statute is illuminated by Wis. Admin. Code § DHS 104.01(12)(b), entitled "Freedom from having to pay for services covered by [Medicaid]." It plainly provides: "Recipients may not be held liable by certified providers for covered services and items furnished under the [Medicaid] program, except for copayments or deductibles under par. (a) . . . ."[3]

¶ 73. The majority acknowledges that the hospital's liens are an attempt to "collect from the patient[]." Majority op., ¶ 18. Nevertheless, it asserts that the liens do not violate the prohibition against "direct charges." It reasons that the hospital is not seeking "direct recourse" from the patients, but rather, it is seeking recourse from the patients' money. *Id.,* ¶ 31.

¶ 74.   This reasoning is not persuasive. There is no meaningful difference between seeking recourse from a patient and seeking recourse from the patient's money. If the prohibition on "direct charges" nevertheless allowed the hospital to file a cause of action against a Medicaid recipient's money settlement because it is "property," what other property belonging to a Medicaid recipient could the hospital seek?

¶ 75.   As explained above, Medicaid recipients cannot be charged for covered services because they are not liable for the cost of these services. The hospital's

_____

[3] The non-liability of Medicaid recipients is repeated in Wis. Admin. Code DHS § 106.04(3), entitled "Non-liability of recipients." It provides, in relevant part, that a hospital may not "attempt to impose an unauthorized charge or receive payment from a recipient, relative or other person for services provided, or impose direct charges upon a recipient in lieu of obtaining payment under the program . . . ."

attempt to collect the patients' money settlement violates this underlying principle.

¶ 76. For the same reason, the majority's attempt to distinguish *Dorr* is unavailing. The majority explains that the Dorrs were not liable for the cost of their services because, as members of an HMO, they were protected by statutory and contractual immunity. Majority op., ¶ 39. Here, the law governing Wisconsin's Medicaid program likewise provides that Medicaid recipients are immune from liability for the cost of services they receive.

¶ 77. The *Dorr* case squarely addresses the issue at hand in this case. There is no legally significant difference between the effect of the statutory and contractual immunity at issue in *Dorr* and the immunity at issue in this case. Based on the reasoning in *Dorr*, "no hospital lien can be filed against [a Medicaid recipient's] property because the [recipient] is not indebted to the hospital for the medical services provided." *See id.,* ¶ 43 (quoting *Dorr*, 228 Wis. 2d at 435).

B

¶ 78. The majority's analysis also overlooks a second important principle underlying Wisconsin's Medicaid program. In a situation like this where a third-party tortfeasor may be liable for services provided to a Medicaid recipient, the hospital has two billing options. It can bill Medicaid, or it can attempt to recover its charges by joining the Gisters' personal injury lawsuit. The law governing Wisconsin's Medicaid program does not authorize any third option.

¶ 79. The hospital's two options are clearly set forth in Wis. Admin. Code § DHS 106.03(8), which provides in relevant part:

Personal Injury and Workers Compensation Claims. If a provider treats a recipient for injuries or illness sustained in an event for which liability may be contested or during the course of employment, *the provider may elect to bill [Medicaid] for services provided* without regard to the possible liability of another party or the employer. *The provider may alternatively elect to seek payment by joining in the recipient's personal injury claim* or workers compensation claim . . . .[4]

(Emphasis added.) Additionally, these two options are clearly set forth in a handbook produced by the Department of Health Services to explain the program to health care providers.[5]

¶ 80. There are advantages and disadvantages to both of the hospital's options. If the hospital chooses the first option and bills Medicaid, its recovery of a portion of its bill is certain, but the hospital will receive reimbursement at a reduced rate as determined by a Medicaid formula.[6] If the hospital chooses the second

---

[4] Wisconsin Admin. Code § DHS 106.03(8) goes on to explain that the hospital cannot attempt to receive payment both from Medicaid and from the recipient's personal injury claim.

[5] *See* DHFS, *All Provider Coordination of Benefits: Medicaid and BadgerCare Information for Providers,* at 21, available at https://www.forwardhealth.wi.gov/kw/pdf/all_coord.pdf. The handbook explains:

> Providers may choose to seek payment from worker's compensation or civil liabilities. Providers may receive more than the Medicaid-allowed amount from the settlement; however, in some cases the settlement may not be enough to cover all costs involved.
>
> Providers are not required to seek payment from worker's compensation or civil liabilities, instead of Wisconsin Medicaid, because of the time involved to settle these cases. . . .

[6] If the hospital choses the first option, the Department of Health Services will bear the responsibility of attempting to recoup those expenses from the tortfeasor. *See* Wis. Stat. § 49.89(2)-(3).

option and the lawsuit is successful, the hospital may recover a larger portion of its charges. Nevertheless, reaching a settlement with the tortfeasor may take months or years. Additionally, the hospital's recovery is by no means guaranteed, especially when the tortfeasor has inadequate insurance.

¶ 81. Although the majority acknowledges that the hospital has but two options under the law, it embraces a third option. It permits the hospital to impose a lien on settlement money the Medicaid recipient recovers from the tortfeasor.

¶ 82. The option embraced by the majority is not authorized by the law governing Wisconsin's Medicaid program. When a statute or code provision sets forth specific options, courts frequently assume that any option that was omitted was intended to be excluded.[7] The majority discards this canon of construction and concludes that, although just two options are set forth in the law governing Medicaid, three options are allowed.

¶ 83. The majority's justification for allowing the hospital to pursue a third option is based on the premise that there is no difference between joining a lawsuit and imposing a lien on the money recovered from that lawsuit. In both cases, the majority contends, "the money being sought originates from the same source (American Family), goes to the same recipients (the Gisters and St. Joseph's), and is designated for the same purpose (to satisfy the medical expenses incurred by the Gisters after the accident)." Majority op., ¶ 37. Because "it is permissible for St. Joseph's to pursue the

[7] See FAS, LLC v. Town of Bass Lake, 2007 WI 73, ¶ 27, 301 Wis. 2d 321, 733 N.W.2d 287 (discussing the maxim "expressio unius est exclusio alterius," which means "the express mention of one matter excludes other similar matters not mentioned.").

funds by joining the lawsuit," the majority concludes that "it is therefore permissible for St. Joseph's to pursue the funds through liens." *Id.*

¶ 84.   This premise is false. Imposing a lien on the Gisters' future settlement money is quite different from joining the Gisters' personal injury lawsuit.

¶ 85.   If the hospital were to join the Gisters' personal injury suit as a subrogated plaintiff, it would bear certain responsibilities as a party to a lawsuit. It would be required to actively participate in the lawsuit by attending hearings, engaging in discovery, and negotiating possible settlements.

¶ 86.   Further, the hospital's entitlement to a portion of the settlement would be subject to various common law principles, such as the made whole doctrine established in *Rimes v. State Farm Mutual Automobile Insurance Co.,* 106 Wis. 2d 263, 272, 316 N.W.2d 348 (1982). Under *Rimes,* "one who claims subrogation rights, whether under the aegis of either legal or conventional subrogation, is barred from any recovery unless the [injured plaintiff] is made whole," and "[i]t is only when there has been full compensation for all the damage elements of the entire cause of action that the [injured plaintiff] is made whole." *Id.* at 275. Accordingly, if the hospital joined the Gisters' personal injury lawsuit, it would not be entitled to any compensation until the Gisters were fully compensated for all of their damages.

¶ 87.   The hospital's attorney well understands the importance of the differences between joining a lawsuit and imposing a lien. During oral argument, he explained: "Absent the availability of a lien, . . . you would be talking at best a subrogated interest which of course would be extinguishable at a hearing pursuant to this court's decision in *Rimes.* . . . I would argue that

a lien under 779.80 is a priority right that is not susceptible to elimination under *Rimes*."[8]

¶ 88.  Unfortunately, the majority fails to grasp these distinctions. By permitting the hospital to bow out of the litigation process and impose a lien on the Gisters' settlement money, the majority arguably allows the hospital to avoid the costs of engaging in litigation and common law principles such as the made whole doctrine. In a case like this where the hospital's charges are substantial and the available insurance proceeds are limited, the hospital could absorb a majority of the settlement, leaving the Gisters and other health care providers, such as doctors, without any recovery.

¶ 89.  I conclude that the Gisters are entitled to a declaration that the hospital's liens are invalid. Because the majority's analysis cannot be squared with the principles underlying Wisconsin's Medicaid program, I respectfully dissent.

¶ 90.  I am authorized to state that CHIEF JUS-TICE SHIRLEY S. ABRAHAMSON and JUSTICE N. PATRICK CROOKS join this dissent.

---

[8] Because the majority fails to grasp any distinction between joining a lawsuit and imposing a lien, it does not grapple with any potential consequences of its decision. Aside from this brief mention during oral argument, the parties did not brief or argue whether a hospital lien would be susceptible to elimination under *Rimes*, and that question has not been decided by the court.