**2021 WI App 46**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

| | |
|---|---|
| Case No.: | 2020AP192-CR |

† Petition for Review filed

Complete Title of Case:

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,†

    V.

CHRYSTUL D. KIZER,

      DEFENDANT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | June 2, 2021 |
| Submitted on Briefs: | January 28, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Reilly, P.J., Gundrum and Davis, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Katie R. York*, assistant state public defender of Madison, and *Colleen Marion*, assistant state public defender of Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Timothy M. Barber*, assistant attorney general and *Joshua L. Kaul*, attorney general. |

# COURT OF APPEALS DECISION DATED AND FILED

## June 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP192-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CF643**

**IN COURT OF APPEALS**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

CHRYSTUL D. KIZER,

    DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Kenosha County: DAVID P. WILK, Judge. *Reversed and cause remanded for further proceedings consistent with this decision.*

Before Reilly, P.J., Gundrum and Davis, JJ.

¶1     GUNDRUM, J.  Charged with numerous felonies, including first-degree intentional homicide, Chrystul D. Kizer sought interlocutory appeal[1] from an order of the circuit court that effectively prevents her from introducing evidence of the affirmative defense of WIS. STAT. § 939.46(1m), related to victims of human trafficking and child sex trafficking.  We granted leave to appeal the order, and because we conclude the circuit court erred in its interpretation of § 939.46(1m), we reverse.

## Background

¶2     According to the criminal complaint, in June 2018, significant evidence led Kenosha detectives to interview seventeen-year-old Kizer in relation to the death of a Kenosha man ("the deceased").  After lying to the detectives, Kizer admitted to taking an Uber from Milwaukee to the deceased's residence, shooting him because "she had gotten upset and she was tired of [him] touching her," and then starting a fire at the residence before departing in the deceased's BMW.  Kizer was charged with first-degree intentional homicide, operating a motor vehicle without owner's consent, arson, possession of a firearm by a felon, and bail jumping, all felonies.

¶3     At a pretrial conference, Kizer discussed the applicability to her case of WIS. STAT. § 939.46(1m), which provides an affirmative defense for victims of human trafficking and child sex trafficking for "any offense committed as a direct

---

[1] *See* WIS. STAT. RULE 809.50(3) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

result of the violation of [WIS. STAT. §§] 940.302(2) or 948.051."[2] The circuit court ordered briefing regarding the interpretation and applicability of this defense.

---

[2] WISCONSIN STAT. § 940.302, "Human trafficking," provides in relevant part:

**(1)** In this section:

(a) "Commercial sex act" means any of the following for which anything of value is given to, promised, or received, directly or indirectly, by any person:

    1. Sexual contact.

    2. Sexual intercourse.

    3. Except as provided in sub. (2)(c), any of the following:

    a. Sexually explicit performance.

    b. Any other conduct done for the purpose of sexual humiliation, degradation, arousal, or gratification.

(b) "Debt bondage" means the condition of a debtor arising from the debtor's pledge of services as a security for debt if the reasonable value of those services is not applied toward repaying the debt or if the length and nature of the services are not defined.

(c) "Services" means activities performed by one individual at the request, under the supervision, or for the benefit of another person.

(d) "Trafficking" means recruiting, enticing, harboring, transporting, providing, or obtaining, or attempting to recruit, entice, harbor, transport, provide, or obtain, an individual.

**(2)** (a) Except as provided in [WIS. STAT. §] 948.051, whoever knowingly engages in trafficking is guilty of a Class D felony if all of the following apply:

    1. One of the following applies:

    a. The trafficking is for the purposes of labor or services.

    b. The trafficking is for the purposes of a commercial sex act.

    2. The trafficking is done by any of the following:

a. Causing or threatening to cause bodily harm to any individual.

b. Causing or threatening to cause financial harm to any individual.

c. Restraining or threatening to restrain any individual.

d. Violating or threatening to violate a law.

e. Destroying, concealing, removing, confiscating, or possessing, or threatening to destroy, conceal, remove, confiscate, or possess, any actual or purported passport or any other actual or purported official identification document of any individual.

f. Extortion.

g. Fraud or deception.

h. Debt bondage.

i. Controlling or threatening to control any individual's access to an addictive controlled substance.

j. Using any scheme, pattern, or other means to directly or indirectly coerce, threaten, or intimidate any individual.

k. Using or threatening to use force or violence on any individual.

L. Causing or threatening to cause any individual to do any act against the individual's will or without the individual's consent.

(b) Whoever benefits in any manner from a violation of par. (a) is guilty of a Class D felony if the person knows or reasonably should have known that the benefits come from or are derived from an act or scheme described in par. (a).

(c) Whoever knowingly receives compensation from the earnings of debt bondage, a prostitute, or a commercial sex act, as described in sub. (1) (a) 1. and 2., is guilty of a Class F felony.

WISCONSIN STAT. § 948.051, "Trafficking of a child," provides in relevant part: "**(1)** Whoever knowingly recruits, entices, provides, obtains, harbors, transports, patronizes, or solicits or knowingly attempts to recruit, entice, provide, obtain, harbor, transport, patronize, or solicit any child for the purpose of commercial sex acts … is guilty of a Class C felony."

Following the briefing and oral argument, the court ruled that the defense "is available to the defendant so long as the defendant is charged with one of the acts in WIS. STAT. § 940.302(2) … and … *the* cause of the offenses listed in § 940.302(2) was the victimization, by others, of" Kizer. None of the charges against Kizer is for "one of the acts in § 940.302(2)." Kizer appeals.

## *Discussion*

¶4　WISCONSIN STAT. § 939.46(1m) provides: "A victim of a violation of [WIS. STAT. §§] 940.302(2) or 948.051 has an affirmative defense for *any offense* committed as a *direct result* of the violation of [§§] 940.302(2) or 948.051 without regard to whether anyone was prosecuted or convicted for the violation of [§§] 940.302(2) or 948.051." (Emphasis added.) Kizer and the State agree that the circuit court erroneously interpreted this statutory provision but disagree as to the correct interpretation. We too agree that the court's holding that the affirmative defense is only available to Kizer if she "is charged with one of the acts in WIS. STAT. § 940.302(2)" is incorrect.

¶5　With regard to the first-degree intentional homicide charge against Kizer, the parties also spar over whether the WIS. STAT. § 939.46(1m) affirmative defense would, if successful, operate as a complete defense to this charge or only mitigate the charge to second-degree intentional homicide. We conclude that it would operate as a complete defense.

¶6　This appeal requires us to engage in statutory interpretation, which is a matter of law we review de novo. *See Noffke ex rel. Swenson v. Bakke*, 2009 WI 10, ¶9, 315 Wis. 2d 350, 760 N.W.2d 156. "Statutory language is given its common, ordinary, and accepted meaning" and "is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of

5

surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110.

Meaning of "Direct Result"

¶7    The parties dispute the breadth of WIS. STAT. § 939.46(1m), particularly what the legislature intended when it wrote that this provision provides a trafficking victim with an affirmative defense "for *any offense* committed as a *direct result* of the violation of [WIS. STAT. §§] 940.302(2) or 948.051."[3] (Emphasis added.) Because the record as it relates to this defense is so limited, we do not here decide whether Kizer is entitled to utilize this defense at her trial.[4] Instead, we consider Kizer's challenge to the circuit court's reading of § 939.46(1m) and provide what we believe to be the appropriate interpretation for the continuation of the criminal proceedings before the circuit court.

¶8    The WIS. STAT. § 939.46(1m) term "any offense" seems straightforward enough, but it is qualified by "committed as a direct result of the

---

[3] As both parties recognize, the affirmative defense of WIS. STAT. § 939.46(1m) will only be available with regard to a particular charged offense if Kizer puts forth "some evidence" that she was a trafficking victim and that her alleged commission of that particular offense was "a direct result of the violation of [WIS. STAT. §§] 940.302(2) or 948.051." *See State v. Schmidt*, 2012 WI App 113, ¶¶8-9, 344 Wis. 2d 336, 824 N.W.2d 839. If she does put forth such evidence, the burden will then switch to the State to prove beyond a reasonable doubt that she either was not a trafficking victim or the commission of that particular offense was not a direct result of the violation of §§ 940.302(2) or 948.051. *See Moes v. State*, 91 Wis. 2d 756, 765-66, 284 N.W.2d 66 (1979).

Although the circuit court's ruling is focused on WIS. STAT. § 940.302(2) (Human trafficking), Kizer's position on appeal is that she is "a child sex trafficking victim, as defined by WIS. STAT. § 948.051." Because we interpret WIS. STAT. § 939.46(1m), which ties the trafficking affirmative defense to both §§ 940.302(2) and 948.051, our interpretation of § 939.46(1m) is the same regardless of whether Kizer seeks to utilize it in connection with §§ 940.302(2) or 948.051.

[4] Both parties agree that the record is not currently in a posture that would allow us to appropriately rule at this juncture as to the applicability of the defense to Kizer's case.

violation of [WIS. STAT. §§] 940.302(2) or 948.051." "Direct result" is not defined for § 939.46(1m). Webster's Third New International Dictionary defines "result" as "to proceed, spring, or arise as a consequence, effect, or conclusion: come out or have an issue … <an injury ~ *ing* from a fall>." *Result*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993). But, the legislature did not just write "result" but tightened up that word by preceding it with "direct." The same dictionary defines "direct" as "stemming immediately from a source." *Direct*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993). The State additionally references the Merriam-Webster Dictionary as defining "direct" as "marked by absence of an intervening agency, instrumentality, or influence" and, like Webster's Third, "stemming immediately from a source." *Direct*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/direct (last visited April 12, 2021). Kizer also cites to Merriam-Webster, but points to a definition of "direct" meaning "characterized by [a] close logical, causal, or consequential relationship." ***Id.***

¶9 We also glean some modest guidance on the meaning of "direct result" from our decision in ***Tri City National Bank v. Federal Insurance Co.***, 2004 WI App 12, 268 Wis. 2d 785, 674 N.W.2d 617. In that case, two Tri City bank employees engaged in a scheme to fraudulently obtain mortgage loans for unqualified borrowers. ***Id.***, ¶1. The scheme was discovered after numerous borrowers defaulted on the loans. ***Id.*** The mortgage companies subsequently sued Tri City, and the suits resulted in settlements. ***Id.***, ¶¶3-5. Tri City sought a declaratory judgment alleging that the financial institution bond issued to it by Federal obligated Federal to indemnify Tri City. ***Id.***, ¶5. Through the course of that litigation, we interpreted bond language which stated that the bond covered: "*Loss resulting directly* from dishonest or fraudulent acts committed by an Employee …."

7

*Id.*, ¶15 (emphasis added). Despite Tri City's contention that this language was ambiguous, we determined otherwise:

> First, the bond clearly restricts indemnification to those losses that occur as a *direct result* of an employee's dishonest acts. This language is not susceptible to more than one meaning. Here, the loss was not direct. It was only after the mortgage defaults occurred, *some three years after* the employees' deceitful actions, that Tri City's liability to the mortgage companies came into being. The losses did not "*result[] directly* from dishonest or fraudulent acts committed by employe[es,]*" as the losses did not exist until the unsuitable mortgage holders defaulted on their loans and the mortgage companies sued Tri City.*

*Id.*, ¶18 (footnote omitted; emphasis added). We continued:

> Tri City's losses—the settlements with the mortgage companies—are not the *direct result* of the employees' dishonesty; the employees were dishonest by permitting financially inappropriate people to obtain mortgages from other entities, not the employer bank. Thus, the bank initially lost nothing as a result of their dishonesty. It was only after the unsuitable mortgagees defaulted on their loans and the mortgage companies sued Tri City that "losses" resulted.

*Id.*, ¶24 (emphasis added).

¶10 Our supreme court has provided additional guidance on the word "direct." In *Gister v. American Family Mutual Insurance Co.*, 2012 WI 86, ¶2, 342 Wis. 2d 496, 818 N.W.2d 880, the court reviewed whether liens by a hospital against proceeds of settlements between patients and a tortfeasor's insurer constituted "direct charges" upon the patients. In doing so, the court noted that "*American Heritage Dictionary* defines 'direct,' in the most relevant definition, as 'proceeding without interruption in a straight course or line; not deviating or swerving.'" *Id.*, ¶30 (citing *Direct*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (3d ed. 1992)). Applying this definition to the relevant statute,

the court concluded that "the provision should be construed to prohibit charges that 'proceed in a straight course or line, without deviating or swerving,' to the patient." *Id.* (citation omitted).

¶11    The *Gister* court determined that the liens were not "direct charges" upon the patients, stating, "It is not difficult to understand what 'direct charges' look like. In the medical context, a hospital directly charges a patient when it sends a bill *to the patient*. The Hospital did not do so here, but rather filed liens against the Gisters' potential settlements with American Family." *Id.*, ¶34 (citations omitted). The liens were not "direct charges" against the patients (the Gisters) "because they attach[ed] to the settlement, not the Gisters themselves." *Id.*, ¶31 n.15.

¶12    In *Whirlpool Corp. v. Ziebert*, 197 Wis. 2d 144, 153-154, 539 N.W.2d 883 (1995), the supreme court considered the difference between a "direct benefit" and an "indirect benefit" in the context of a family member exclusion clause in a homeowner's insurance policy. In *Whirlpool*, a three-year-old girl was injured by a meat grinder allegedly manufactured by Whirlpool, and the girl, along with her mother and father, filed suit against Whirlpool. *Id.* at 147-148. Whirlpool filed a separate contribution action against the mother and her homeowner's liability insurer, alleging that the girl's injuries were due to the mother's negligent supervision. *Id.* at 148. The insurer moved for summary judgment, asserting that the family exclusion clause in the homeowner's policy—stating "[w]e do not cover bodily injury to an insured person … whenever any benefit of this coverage would accrue directly or indirectly to an insured person"—absolved it from any coverage responsibilities with regard to the mother. *Id.* at 148, 153.

¶13    Looking to Black's Law Dictionary, the *Whirlpool* court noted that "[t]he term 'direct' is defined as: 'immediate; proximate; by the shortest course;

without circuity; operating by an immediate connection or relation, instead of operating through a medium; the opposite of indirect.'" ***Whirlpool***, 197 Wis. 2d at 153 (citing *Direct*, BLACK'S LAW DICTIONARY (6th ed. 1990)). The court then stated:

> A "direct" benefit, therefore, would accrue to [the girl] by way of a "direct" claim against [her mother] and [the homeowner's insurer].... The term "indirect" is defined as: "[n]ot direct in relation or connection; not having an immediate bearing or application; not related in the natural way." An indirect benefit would incur to [the girl] if Whirlpool won its contribution claim since the money Whirlpool receives will, in all practical respects, be funneled through to [the girl]. [The girl] would receive, in the plainest sense of the word, an indirect benefit.

***Id.*** at 153-54 (citation omitted).

¶14    In another context, our courts have noted the distinction between a "direct consequence" and a "collateral consequence" of a defendant's plea in a criminal case. In ***State v. Parker***, 2001 WI App 111, ¶8, 244 Wis. 2d 145, 629 N.W.2d 77, we stated that a "direct consequence is one that definitely, immediately and largely automatically flows from the conviction. If a consequence might or might not occur in a given case, and is the result of a separate decision-making process, it is collateral." ***Id.*** (citation omitted). We held in ***Parker*** that transfer to an out-of-state prison facility, "which might or might not occur at the discretion of the Department of Corrections, is a collateral[, not direct,] consequence of conviction," and also noted that we had held in prior cases that "deportation, restitution, subsequent filing of a sexually violent person petition, habitual offender penalties and the consequences of revocation of probation" were also collateral, not direct, consequences. ***Id.***, ¶9.

¶15    Considering the different dictionary definitions and court decisions related to the terms "direct" and "direct result," some guidance emerges.    In determining whether a jury should be instructed on whether the commission of a particular offense by a trafficking victim is a "direct result" of "the violation of [WIS. STAT. §§] 940.302(2) or 948.051," a court should consider whether there is "some evidence" to support such a finding based on whether the victim's offense arises relatively immediately from the trafficking violation of which the victim is a victim, is motivated primarily by the trafficking violation, is a logical and reasonably foreseeable consequence of that violation, and is not in significant part caused by events, circumstances or considerations other than that violation.  *See State v. Schmidt*, 2012 WI App 113, ¶¶8-9, 344 Wis. 2d 336, 824 N.W.2d 839.  This is not intended as an exhaustive list of factors for a court to consider in making such a determination; rather, it is merely intended to provide some guidance.

First-Degree Intentional Homicide

¶16    The State asserts that with regard to the first-degree intentional homicide charge against Kizer, the affirmative defense of WIS. STAT. § 939.46(1m) is not a complete defense but, if successful, would only mitigate the charge to second-degree intentional homicide.  We cannot agree.

¶17    While WIS. STAT. § 939.46(1m) is the key provision we interpret regarding the applicability of the affirmative defense, consideration of several related statutory provisions is important for that interpretation:

> **[WISCONSIN STAT. §] 939.44 Adequate provocation**.
>
>    ….
>
>    **(2)** Adequate provocation is an affirmative defense only to first-degree intentional homicide and *mitigates that offense to 2nd-degree intentional homicide.*

(Emphasis added.)

> **[WISCONSIN STAT. §] 939.45 Privilege**. The fact that the actor's conduct is privileged, although otherwise criminal, is a defense to prosecution for any crime based on that conduct. The defense of privilege can be claimed under any of the following circumstances:
>
> **(1)** When the actor's conduct occurs under circumstances of coercion or necessity so as to be privileged under [WIS. STAT. §§] 939.46 or 939.47.
>
> **[WISCONSIN STAT. §] 939.46 Coercion**. **(1)** A threat by a person other than the actor's coconspirator which causes the actor reasonably to believe that his or her act is the only means of preventing imminent death or great bodily harm to the actor or another and which causes him or her so to act is a defense to a prosecution for any crime based on that act, *except that if the prosecution is for first-degree intentional homicide, the degree of the crime is reduced to 2nd-degree intentional homicide*.
>
> **(1m)** A victim of a violation of [WIS. STAT. §§] 940.302(2) or 948.051 has an affirmative defense for *any offense* committed as a *direct result* of the violation of [§§] 940.302(2) or 948.051 without regard to whether anyone was prosecuted or convicted for the violation of [§§] 940.302(2) or 948.051.
>
> **(2)** It is no defense to a prosecution of a married person that the alleged crime was committed by command of the spouse nor is there any presumption of coercion when a crime is committed by a married person in the presence of the spouse.
>
> **(3)** A petitioner under [WIS. STAT. §§] 813.12 or 813.122, or an individual whose parent, stepparent, or legal guardian filed a petition under [§] 813.122 on behalf of the individual as a child victim, as defined in [§] 813.122(1)(c), has an affirmative defense for an offense under [WIS. STAT. §] 175.35(2e) that is punishable under [§] 175.35(3)(b)2., or for an offense under [WIS. STAT. §] 941.2905, if the person prohibited from possessing a firearm was the respondent in the action under [§§] 813.12 or 813.122.

(Emphasis added.)

> **[WISCONSIN STAT. §] 939.47 Necessity**. Pressure of natural physical forces which causes the actor reasonably to believe

> that his or her act is the only means of preventing imminent public disaster, or imminent death or great bodily harm to the actor or another and which causes him or her so to act, is a defense to a prosecution for any crime based on that act, *except that if the prosecution is for first-degree intentional homicide, the degree of the crime is reduced to 2nd-degree intentional homicide*.

(Emphasis added.)

¶18    As is readily seen, WIS. STAT. § 939.46(1m) says nothing suggesting that this affirmative defense only mitigates a first-degree intentional homicide charge to second-degree intentional homicide. In advocating for this position, the State directs us to WIS. STAT. § 940.01(2). That provision states in relevant part:

> MITIGATING CIRCUMSTANCES. The following are affirmative defenses to prosecution under this section [first-degree intentional homicide] which mitigate the offense to 2nd-degree intentional homicide under [WIS. STAT. §] 940.05: (a) *Adequate provocation.* Death was caused under the influence of adequate provocation as defined in [WIS. STAT. §] 939.44 … (d) *Coercion; necessity.* Death was caused in the exercise of a privilege under [WIS. STAT. §] 939.45(1).

Sec. 940.01(2).

¶19    WISCONSIN STAT. § 939.45 provides that "[t]he defense of privilege can be claimed … **(1)** When the actor's conduct occurs under circumstances of coercion or necessity so as to be privileged under [WIS. STAT. §§] 939.46 or 939.47." The State asserts: "Importantly, section 939.45(1) does *not* limit itself by reference to a particular subsection of section 939.46. Rather, by referring to the statute generally, it incorporates *all of* the subdivisions thereof, including subsection (1m)."

13

¶20 WISCONSIN STAT. §§ 939.45(1) and 939.46 (and 939.47) were enacted in 1955, but at that time, only subsecs. (1) and (2) existed in § 939.46.[5] Despite § 939.45(1) then also referring to "[§] 939.46" "generally," it could not possibly "incorporate[]" subsec. (2) of § 939.46 as subsec. (2) provides no circumstance where the defense of privilege could be claimed. Thus, despite referring generally to § 939.46, the legislature could only have meant that § 939.45(1) "incorporated" only subsec. (1) of § 939.46.

¶21 Subsection (3) was added to WIS. STAT. § 939.46 in 2018, and subsec. (1m)—the subsection at issue in this case—was added in 2008, with no change at either time to WIS. STAT. §§ 939.45(1) or 940.01(2). Just as § 939.45(1) did not have actual applicability to both subsections of § 939.46 at the time those provisions were enacted in 1955, §§ 939.45(1) and 940.01(2)(d) clearly do not have applicability to all subsections of § 939.46 today as § 939.46(2) still provides no circumstance in which the defense of privilege could be claimed and § 939.46(3) only provides an affirmative defense in limited circumstances related to straw purchases of firearms and thus does not apply in any way to a homicide charge. While it is abundantly clear that the mitigation from first-degree intentional homicide to second-degree intentional homicide referred to in § 940.01(2) is applicable to § 939.46(1) (through § 939.45(1)), as both §§ 940.01(2) and 939.46(1) directly address the mitigation of a charge of first-degree intentional homicide to second-degree intentional homicide, it is not at all as clear that the legislature intended mitigation only to second-degree intentional homicide where the

---

[5] In that original statute, instead of first-degree intentional homicide being mitigated to second-degree intentional homicide, the phraseology stated that "murder" would be mitigated to "manslaughter." WIS. STAT. § 939.46(1) (1955-56).

affirmative defense of § 939.46(1m) applies, especially since that provision itself says absolutely nothing to suggest such a limitation on the mitigation.

¶22    What is unmistakably clear, however, is that WIS. STAT. § 939.46(1) plainly and specifically states that a threat to a person, under the circumstances described in that subsection, which causes the person to commit a criminal act "is a defense to a prosecution for *any crime* based on that act, *except that if the prosecution is for first-degree intentional homicide, the degree of the crime is reduced to 2nd-degree intentional homicide*," *id.* (emphasis added), yet, in § 939.46(1m), the provision immediately following subsec. (1), the legislature chose not to similarly limit the mitigation. Instead, the legislature chose to limit the applicability of the § 939.46(1m) affirmative defense in a different manner—by writing that it only applies if the offense with which a trafficking victim is charged is committed as a "direct result of the violation of [WIS. STAT. §§] 940.302(2) or 948.051." As the State acknowledges, citing *Faber v. Musser*, 207 Wis. 2d 132, 138, 557 N.W.2d 808 (1997), "when interpreting statutes, courts 'presume that the legislature enacts laws with full knowledge of existing statutes.'" The legislature could have easily written the same language into subsec. (1m) that it wrote into subsec. (1)—"*except that if the prosecution is for first-degree intentional homicide, the degree of the crime is reduced to 2nd-degree intentional homicide*"—but it chose not to do so. Section 939.46(1m) (emphasis added). As our supreme court has stated: "When a statute with respect to one subject contains a given provision, 'the omission of such provision from a similar statute concerning a related subject is significant in showing that a different intention existed.'" *Orion Flight Servs., Inc. v. Basler Flight Serv.*, 2006 WI 51, ¶42, 290 Wis. 2d 421, 714 N.W.2d 130 (citation omitted). It is not the job of the courts to write in such language where the legislature chose not to execute its public-policy will to do so.

15

¶23 We interpret statutory language "in relation to the language of surrounding or closely-related statutes." *Noffke*, 315 Wis. 2d 350, ¶11 (citation omitted). Looking at such statutes here, we note further that WIS. STAT. § 939.44, "Adequate provocation," and WIS. STAT. § 939.47, "Necessity," are both also referred to in WIS. STAT. § 940.01(2) as mitigating first-degree intentional homicide to second-degree intentional homicide. *See* § 940.01(2)(a), (d). Like WIS. STAT. § 939.46(1), both §§ 939.44 and 939.47 specifically state that first-degree intentional homicide is only mitigated to second-degree intentional homicide. Section 939.44(2) provides that "[a]dequate provocation is an affirmative defense only to *first-degree intentional homicide and mitigates that offense to 2nd-degree intentional homicide*." (Emphasis added.) Section 939.47, "Necessity," states that it is "a defense to a prosecution for any crime … *except that if the prosecution is for first-degree intentional homicide, the degree of the crime is reduced to 2nd-degree intentional homicide*." (Emphasis added.) In stark contrast, the legislature wrote § 939.46(1m) so as to provide an affirmative defense for "any offense" committed by a trafficking victim as a "direct result of the violation of [WIS. STAT. §§] 940.302(2) or 948.051," without including any language limiting the mitigation of a first-degree intentional homicide offense to a second-degree intentional homicide offense. The absence of such limiting language for the subsec. (1m) affirmative defense compellingly indicates that the legislature did not intend to limit

the trafficking affirmative defense in the way that it limited the affirmative defenses of §§ 939.44, 939.46(1), and 939.47.[6]  As Kizer points out in her reply brief:

> The State does not explain why, if the legislature sought to create a trafficking defense that provided a complete defense to some charges but a mitigation defense to first-degree intentional homicide [to only second-degree intentional homicide], it would not have included mitigation language, as it chose to do with coercion and necessity.  The mitigating language used in the coercion[,] necessity [and adequate provocation] statutes is conspicuously missing in [§] 939.46(1m).

Had the legislature intended to limit subsec. (1m) in the way the State suggests, we are convinced it would have plainly said so, just as it did in these three surrounding statutory provisions.[7]  Thus, as far as the first-degree intentional homicide charge

---

[6]  Indeed, it is possible the legislature did not include in WIS. STAT. § 939.46(1m) language limiting mitigation of first-degree intentional homicide to only second-degree intentional homicide because it intended a sufficiently tight meaning of "direct result" such that it did not contemplate the § 939.46(1m) affirmative defense would apply to first-degree intentional homicide.  It is possible legislators did not contemplate a circumstance in which a trafficking victim could commit first-degree intentional homicide as a "direct result" of a violation of WIS. STAT. §§ 940.302(2) or 948.051.  *See supra* note 2 for a description of those offenses.  Whatever the reason, the legislature chose not to include the first-degree to second-degree mitigation language.

[7]  Because we rely upon the plain language of WIS. STAT. § 939.46(1m), we do not give any weight to legislative history.  That said, the State directs us to language in an undated memo from a special interest group, the Wisconsin Coalition Against Sexual Assault, Inc., which the State claims "appears to have … prompted" the trafficking law.  The State notes that the memo asked for inclusion of a provision that "[t]rafficked persons should be immune from prosecution for crimes they committed as a result of being a trafficking victim."  The State then points out a "handwritten note next to this request indicat[ing] 'spec. withholding passport, etc.'" and asserts that because "withholding a passport is one of the many enumerated modes of" committing sex trafficking or labor trafficking, this note makes "evident" that § 939.46(1m) is "not a free-standing defense" but instead just "a specific application of a coercion/necessity defense."

17

against Kizer is concerned, if the § 939.46(1m) affirmative defense is deemed applicable to that charge, it would, if successful, act as a complete defense and not simply mitigate the charge to second-degree intentional homicide.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this decision.

---

There is no indication as to who made the note identified by the State. Nonetheless, the State makes an extraordinary stretch in suggesting that this note indicates that the legislature intended the trafficking affirmative defense only to mitigate first-degree intentional homicide to second-degree intentional homicide, despite the legislature failing to include such explicit language. Were we to consider this memo at all, we would note that the language "[t]rafficked persons should be immune from prosecution for crimes they committed as a result of being a trafficking victim" fairly well mirrors in substance the final language adopted by the legislature *and* includes no suggestion that first-degree intentional homicide should be treated any differently from any other crime to which the trafficking affirmative defense applies.

More significant than a special interest group's undated memo with handwritten notes by unidentified persons is the actual Legislative Reference Bureau analysis of Senate Bill 292, which bill is the legislation that passed both houses of the legislature and was signed into law by the Governor. *See Sheely v. DHSS*, 150 Wis. 2d 320, 335-36, 442 N.W.2d 1 (1989) (stating that the Legislative Reference Bureau analysis of a bill, which analysis is "present on the bill when the legislature vote[s] on it," is "'significant' in determining legislative intent." (citing *West Allis Sch. Dist. v. DILHR*, 116 Wis. 2d 410, 422, 342 N.W.2d 415 (1984)). With regard to the affirmative defense provision at issue in this case, the analysis states "[t]his bill also provides an affirmative defense for any offense committed by the victim of the trafficking offense as a direct result of the trafficking offense," giving no hint to voting lawmakers that the new law they were creating would really be treating one offense—first-degree intentional homicide—differently than every other offense covered by this new affirmative defense. *See* 2007 SENATE BILL 292, ANALYSIS BY THE LEGISLATIVE REFERENCE BUREAU (2007), *available at* https://docs.legis.wisconsin.gov/2007/related/proposals/sb292.

2